IN THE UNITED STATES COURT OF THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID J. VOACOLO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. _____ |
| ) | |
| FEDERAL NATIONAL MORTGAGE ) | (Judge _____) |
| ASSOCIATION, and ) | |
| UNITED STATES of AMERICA, ) | |
| ) | |
| Defendants, ) | |

## VERIFIED CLASS ACTION COMPLAINT

The complaint of the plaintiff, David J. Voacolo, respectfully shows and alleges as follows:

1. The plaintiff herein, David J. Voacolo (hereafter known as the Plaintiff), is a resident of the State of New Jersey. The Plaintiff resides at: 44 Elkton Street Hamilton New Jersey 08619.

2. Defendant Federal National Mortgage Association (hereafter known as Defendant Fannie Mae) has a principal place of business at: 3900 Wisconsin Avenue, NW Washington, DC 20016-2892, with multiple regional offices around the United States of America.

3. Due to what has become known as the Housing Crisis (or Economic Crisis), Defendant Fannie Mae was not solvent in September 2008.

4. Pursuant to federal legislation, on September 7, 2008, the Federal Housing Finance Agency (hereafter FHFA) became Defendant Fannie Mae's conservator. That same day, the FHFA published a statement on its website that, "Upon the Director's determination that the

Conservator's plan to restore the Company to a safe and solvent condition has been completed successfully, the Director will issue an order terminating the conservatorship."[1]

5. On or about September of 2008, the U.S. Treasury and Defendant Fannie Mae entered a Preferred Stock Purchase Agreement, under which the U.S. Treasury would provide billions of dollars to Defendant Fannie Mae in exchange for 10% dividends and the right to purchase 79.9% of Fannie Mae's stock.

6. In August of 2009, Plaintiff, relying on statements by the Defendants that the conservatorship would terminate once Defendant Fannie Mae became solvent again, purchased 64,000 shares of Defendant Fannie Mae's stock at the rate of seventy-seven cents per share. Plaintiff subsequently sold 14,000 of these shares, but continues to own the remaining 50,000 shares.

7. On August 9, 2012, Susan McFarland, then the Chief Financial Officer of Defendant Fannie Mae, informed the United States Treasury that Defendant Fannie Mae's financial condition had improved to the point that it was again making profits.

8. Approximately one week later, on August 17, 2012, Defendant Fannie Mae and the United States Treasury entered the Third Amendment to Amended and Restated Senior Preferred Stock Purchase Agreement (hereafter the "Third Amendment").

9. Pursuant to the terms of the Third Amendment, Defendant Fannie Mae has been paying 100% of its profits to the United States Treasury.

10. The Third Amendment deprives Plaintiff of what his shares would otherwise be worth. If not for the operation of the Third Amendment, Plaintiff's 50,000 shares would now be valued at approximately $ 35 (thirty-five dollars) per share, for a total of $ 1,750,000 (1.75 million dollars). Thus, Plaintiff has been deprived of his property.

---

[1] Federal Housing Finance Agency, "FAQs: Questions and Answers on Conservatorship", fhfa.gov, September 7, 2008. Available at: http://www.fhfa.gov/Media/PublicAffairs/Pages/Fact-Sheet-Questions-and-Answers-on-Conservatorship.aspx (accessed on June 14, 2016).

11. Plaintiff, through his attorneys, sent Defendant Fannie Mae several legal notices regarding this deprivation to no avail.

12. Plaintiff had no involvement in the entering of the Third Amendment, nor had he had an opportunity to have his objection heard.

13. Thus, the Third Amendment violated Plaintiff's Due Process rights under the Fifth Amendment to the U.S. Constitution ("No person shall… be deprived of life, liberty, or property, without due process of law") and constituted an illegal exaction. See *Starr Int'l Co. v. United States*, 121 Fed. Cl. 428, 434-35 (Fed. Cl. 2015) (finding that taking 79.9% of the shares of AIG was an illegal exaction in violation of the Due Process Clause).

14. It is not a coincidence that approximately one week after the U.S. Treasury was informed Defendant Fannie Mae was again making profits it arranged to have 100% of those profits paid to the Treasury. From the beginning, the United States intended that the taxpayers would reap a profit from the Treasury's investment in Defendant Fannie Mae.[2]

15. Therefore, statements made by Defendants to the effect that the conservatorship would end once Fannie Mae was deemed solvent were made with the knowledge that the conservatorship would, in reality, continue until such time as Defendant U.S. Treasury deems that taxpayers have received a sufficient return on their investment. These misstatements were made in order to encourage potential shareholders, such as Plaintiff had been at the time, and reassure them that they could expect to profit from an investment in Defendant Fannie Mae.

---

[2] See Letter from Randall DeValk dated April 21, 2015 to Charles E. Grassley, Chairman of the Committee on the Judiciary, (Available at: http://online.wsj.com/public/resources/documents/GrassleyResponse04212015.pdf) wherein the Treasury conceded that the "Treasury did not make a simple 'loan' to Fannie and Freddie…The terms of the preferred stock agreements are intended to compensate Treasury and the taxpayers…not to pay back a one-time loan…Any private lender would demand substantial compensation." Id. p. 3. See also Federal Housing Finance Agency: Office of Inspector General, "White Paper: FHFA-OIG's Current Assessment of FHFA's Conservatorships of Fannie Mae and Freddie Mac," p. 31 (March 28, 2012) (Available at: http://www.fhfaoig.gov/Content/Files/WPR-2012-001.pdf) referring to bailout of Fannie Mae as "Treasury's outstanding investment."

16. WHEREFORE, plaintiff demands judgment against defendants in the sum of $5,000,000, costs and disbursements, together with any other relief the Court finds to be just and proper.

Dated: 31, July , 2017

                         Brus Chambers LLC
                         Attorneys for the plaintiff
                         404 Fifth Avenue, Suite 40008
                         New York, New York 10018,
                         United States of America
                         202-714-6855

AO 458 (Rev. 06/09)  Appearance of Counsel

# UNITED STATES DISTRICT COURT
for the

David J. Voacolo
_Plaintiff_
v.
Federal National Mortgage and U.S.A
_Defendant_

Case No.

## APPEARANCE OF COUNSEL

To:   The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

David J. Vracolo

Date: 7/31/17

_Attorney's signature_

Ravi Shah
_Printed name and bar number_

101 Hudson St, STE 2112
_Address_

rp.shah@live.com
_E-mail address_

609-455-9066
_Telephone number_

315-602-2036
_FAX number_